IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

VICTOR J. MORRISON                        :

    Plaintiff                        :

    v.                               :        Civil Action No. AMD-06-2043

CORRECTIONAL MEDICAL                      :
 SYSTEMS, INC., *et al.*
                                          :
    Defendants

MEMORANDUM

    Plaintiff, a DOC prisoner incarcerated at the Eastern Correctional Institution ("ECI"), filed

this civil rights action pursuant to 42 U.S.C. § 1983 seeking injunctive relief requiring defendants

to provide him with Interferon injections to alleviate ongoing damage to his liver caused by his

exposure to the Hepatitis C virus ("HCV").  (Paper No. 1).  Before the Court is an unopposed[1]

Motion to Dismiss, or, in the Alternative, for Summary Judgment filed by defendants Correctional

Medical Services, Inc. ("CMS"), the contractor responsible for delivery of health care to ECI

prisoners during the relevant period at issue here, and CMS employees Kevin Johnson and Maryam[2]

Messforosh.[3]  (Paper No. 10).[4]  For reasons to follow, the motion, construed as a motion for

---

[1]Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Clerk on November 6, 2006, informed plaintiff that: defendants had filed a dispositive motion; plaintiff had seventeen days in which to file written opposition to the motion; and if plaintiff failed to respond, summary judgment could be entered against him without further notice.  (*See* Paper No. 11). Plaintiff has elected not to respond.

[2]The Clerk shall amend the caption of the docket to reflect the proper spelling of defendant Messforosh's name.

[3]CMS assumed responsibility for health care services at all Division of Correction ("DOC") facilities effective July 1, 2005.

[4]Defendant Dr. Barry was not served with summons and the complaint.  Had he been served, he would be entitled to summary judgment in his favor based on the allegations and responses filed herein.  Thus, Dr. Barry will be dismissed from this action at this time.

summary judgment, is granted.[5]

Background

Hepatitis C, a viral infection transmitted through contact with infected blood, can result in a chronic condition affecting the liver.[6]   Up to 30% of those exposed to Hepatitis C virus ("HCV") will recover without problems, while roughly 20% will develop cirrhosis of the liver within ten to twenty years of exposure.   Another 5% of the infected population ultimately will succumb to liver

While HCV can be diagnosed using a simple blood test, more sophisticated tests are required to identify the particular genetic strain ("genotype") of the virus; different strains require different treatment regimens.   Additionally, a liver biopsy is needed before committing to a course of treatment to identify the extent of liver damage.   The number of hepatologists (liver specialists) available to treat the growing HCV-infected population is inadequate, and patients may wait more than six months for referral to such specialists.

Current treatment for chronic HCV, which can reduce or eliminate the virus in some instances and reduce the risk of long-term liver damage, requires the administration of a drug "cocktail" containing pegelated interferon and ribovirin drugs over a period of approximately

---

[5]Also pending is plaintiff's motion to appoint counsel  Paper No. 9.  The court concludes that plaintiff is able to articulate his claims and present issues for redress by this court.  Therefore, in accordance with the discretion afforded under 28 U.S.C. § 1915(e)(1), his request for appointment of counsel shall be denied.  *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984).

[6]The information concerning the disease and the Maryland Division of Correction's ("DOC") response to prisoners afflicted with it is gleaned from the Declaration and Supplemental Declaration of Dr. Sharon Baucom, an employee of the Maryland Department of Public Safety and Correctional Services (DPSCS), filed in *Worsham v. Governor, et al.*, Civil Action No. JFM-03-628 (D. Md. 2003).  *Worsham* was the lead case which led to implementation of the Department of Public Safety and Correctional Services' (DPSCS") Hepatitis C treatment protocol.  A consent Order of Dismissal was entered in the case on November 18, 2005, after the parties agreed that the protocol, entitled "Infection Control Manual, Surveillance and Treatment of Infectious Diseases, Management of Hepatitis C and HIV/HCV Co-Infection in Maryland Inmates," was constitutionally adequate, had been implemented by the DPSCS, and was funded by the Maryland General Assembly.  *See Worsham* at Paper No. 62.  The Order of Dismissal specifically did not preclude individual DOC prisoners from filing any action for failing to provide treatment required under the protocol.

eighteen months.  In 2003, the annual cost of treating a prisoner with these drugs was estimated

between $18,000 and $20,000.  Treatment is effective for roughly 40% of those individuals infected

by the most common genotype of the virus; the efficacy is reduced for those who can be treated with

only one drug. The treatment regimen is not recommended for patients suffering from depression,

heart disease, substance abuse, or other chronic medical conditions.  Additionally, treatment should

be withheld from patients not likely to complete the regimen or those likely to resume illegal drug

use or alcohol consumption.[7]

Authorities began to see an increasing number of HCV-infected individuals enter the nation's

prisons in the mid-to-late-1990s.  Maryland, however, did not provide screening or treatment for

HCV prisoners (others than those who entered the DOC while already undergoing a course of

treatment) until 2001.  In November 2003, a draft protocol was circulated among DPSCS medical

personnel and the DOC's regional medical directors employed by the contractual health care

providers.  By December 2003, cases involving 17 prisoners were initially reviewed for

consideration under the proposed protocol.

The protocol, which was the subject of the *Worsham* case, was formally adopted by the

DPSCS on October 14, 2004.  Against this background, the court now examines the issue of

whether plaintiff, who is infected with HCV, is receiving constitutionally adequate medical care.

## Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to

any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ.

P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477

---

[7]Reinfection after incomplete treatment can lead to the development of resistant strains of HCV, and alcohol consumption impairs liver function, thus negating the effects of treatment.

U.S. 317, 322 (1986).   In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.   *See Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987).   When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party.   *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998).   There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.   If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."   *Anderson*, 477 U.S. at 249-50 (citations omitted).

In order to state a constitutional claim for denial of medical care, plaintiff must demonstrate that defendants' acts or omissions amounted to deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).   In essence, the treatment rendered must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.   *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir.1990) (citation omitted). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier*, 896 F.2d at 851.   Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U. S. 825, 837 (1994).   Thus, a health care provider must have actual knowledge of a serious condition and not just knowledge of the symptoms. *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998).[8]

---

[8]Mere negligence or malpractice does not rise to a constitutional level. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986).

"'[B]ecause society does not expect that prisoners will have unqualified access to health care,' the objective component of an Eighth Amendment claim based on deprivation of medical attention is satisfied only if the medical need of the prisoner is 'serious.'" *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "[A]n injury or condition is 'serious' only if it is 'life threatening or poses a risk of needless pain or lingering disability if not treated at once.'" *Anderson-El v. O'Keefe*, 897 F. Supp. 1093, 1096 (N.D. Ill. 1995) (quoting *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991)). In determining whether an alleged deprivation of medical care amounts to a constitutional violation, courts must consider the severity of the medical problem, the potential for harm if medical care was denied or delayed, and whether such harm actually resulted from the lack of medical attention. *See Burns v. Head Jailor of LaSalle County*, 576 F. Supp. 618, 620 (N.D. Ill. 1984) (citation omitted).

Analysis

In addition to naming individual employees, plaintiff has directed his allegation of denial of medical care against against CMS, the contractual health care provider at ECI. Such an allegation -- aimed at the entity that employs ECI's medical staff -- is based solely upon vicarious liability, otherwise known as the doctrine of *respondeat superior*. It is well settled that the doctrine of *respondeat superior* does not apply in § 1983 claims, even where the defendant is a private corporation, rather than a municipality or other public agency. *See Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *McIlwain v. Prince William Hospital*, 774 F.Supp. 986, 990 (E.D.Va. 1991).

Although plaintiff's claim cannot proceed against CMS, the court's inquiry does not end there.

The record is unclear as to when plaintiff was first diagnosed with HCV.  On April 1, 2006, plaintiff requested treatment for HVC.  Under the protocol, prisoners seeking such treatment must undergo a specific regimen, which includes blood tests to determine liver function, a chest x-ray, a psychiatric consultation, and a liver biopsy. Paper No. 10, Exhibit A, ¶ 4.  Blood tests were performed on October 6, 2005, April 17, 2006, and August 8, 2006.  The tests revealed elevation of the liver enzyme ALT. *Id*., Exhibit A, ¶ 5.  Plaintiff also underwent psychiatric evaluation which showed no mental health impairment that would prevent him from receiving HCV treatment. *Id*., ¶ 6.  Base-line chest x-rays were taken on May 24, 2006, and June 14, 2006. *Id*., Exhibit A, ¶ 7.  He was evaluated at the HVC clinic on May 18, 2006, and September 27, 2006. *Id*., Exhibit A, ¶ 8.

At his September 27, 2006, clinic visit, plaintiff was scheduled to undergo a liver biopsy, to determine whether the degree of liver fibrosis and inflammation warranted treatment of his HCV. He refused to undergo the biopsy, signed a Release of Responsibility form, and refused other consideration for HCV treatment. *Id*., Exhibit A, ¶ 9.  Plaintiff's blood work will be repeated in February 2007; under the terms of the protocol, however, he will not be considered for HVC treatment and will no longer be followed in the HVC clinic unless he agrees to undergo a liver biopsy.

*Id*.

Plaintiff demands treatment with Interferon without first undergoing the full diagnostic assessment required to determine whether the drug might benefit him.  In essence he "harbors a different opinion than his custodians as to the correctness of his course of treatment." *Goff v. Bechtold*, 632 F.Supp. 697, 698 (S.D.W. Va. 1986). This difference, however, does not infringe on a constitutional right. *Id*. at 699.  Accordingly, an Order shall be entered granting summary judgment

to defendants.

Filed: November 30, 2006                    __/s/_____
                                            Andre M. Davis
                                            United States District Judge